**IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AHMED AFIFY | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 08 C 2062 |
| | ) | |
| KEITH NYGREN, McHenry County Sheriff, | ) | Honorable William T. Hart |
| | ) | |
| | ) | |
| Respondent. | ) | |

**PETITIONER'S RESPONSE TO GOVERNMENT'S RETURN**

A.    INTRODUCTION.

The Petitioner filed his claim for *habeas corpus* in this court on April 11, 2008.  The

parties appeared before this Court on April 16, 2008, on his *Emergency Motion for Grant of Writ*

*of* Habeas Corpus *or Order to Show Cause*, which was denied by the Court.  At the same time,

the Court ordered the Government to answer or otherwise plead to the Petition within seven (7)

days.  The Petitioner files this Response to the Government's return seeking a ruling on the

Petition in Petitioner's favor for the reasons stated herein.  The Petitioner omits any statement of

facts, since the relevant facts are contained in the Petitioner's *Petition for* Habeas Corpus.

B.    SUMMARY OF ARGUMENT.

The Government's brief relies upon an untenable presumption, namely, that the United

States Department of Homeland Security has the authority conferred by Congress to detain the

Petitioner at this time.  As explained in detail below, the statutory scheme does not contemplate

that a person in the Petitioner's circumstances, *i.e.*, of having prevailed before the Immigration

Judge, may be detained any further once a decision is rendered.  Contrary to what the

Government asserts, the Petitioner does not challenge the USDHS' discretion – there is no discretion to exercise since Congress confers no authority.  Further, since no authority is conferred by Congress in these circumstances, there are no "administrative" remedies to exhaust. It should be noted that the Petitioner's allegation that no such authority exists was made plain in the Petition at ¶15, and in Petitioner's Emergency Motion at ¶2.  Nowhere, however, does the Government offer any authority, whether in the statute or case law, to demonstrate that the Petitioner's assertion is incorrect.  Consequently, the Government cannot be found to have sustained its burden[1] that the Petitioner ought to be detained and he should be released forthwith.

C.    ARGUMENT.

The Government asserts that it has the authority to continue to detain an alien under 8 U.S.C. §1226, despite a favorable decision from the Immigration Court.  A plain reading of the statute, however, indicates that the Government is mistaken in its assumption of the authority to detain the Petitioner.  Of the two provisions which cover detention, §1226 and §1231, neither gives the DHS the authority to continue to detain the Petitioner after the immigration court decided Petitioner's case in his favor.  Each provision will be addressed in turn.

The pertinent portion of the statute at §1226 states as follows:[2]

(a) Arrest, detention, and release
On a warrant issued by the Attorney General, an alien may be arrested and
***detained pending a decision on whether the alien is to be removed from the United States***. Except as provided in subsection (c) of this section and pending such decision, the Attorney General--
  (1) may continue to detain the arrested alien; and
  (2) may release the alien on--

---

[1] Under §2241, the Government bears the burden to demonstrate that the writ "should not be granted." 28 U.S.C. §2243.  The Government has not met its burden by pointing to a particular statute that demonstrates that the Petitioner's detention is lawful.

[2] The entire section of the statute is attached hereto as Exhibit "A"

>    (A) bond of at least $1,500 with security approved by, and containing
> conditions prescribed by, the Attorney General; or
>        (B) conditional parole; but
>    (3) may not provide the alien with work authorization (including an
> "employment authorized" endorsement or other appropriate work permit), unless
> the alien is lawfully admitted for permanent residence or otherwise would
> (without regard to removal proceedings) be provided such authorization.

8 U.S.C. §1226(a) (West, 2008) (emphasis added).  As should be clear from a plain reading of

§1226, *supra*, Congress conferred authority upon the DHS to detain an alien only up to the point

at which a "decision" is made.

Once an order of removal is entered by an immigration court, another section of the INA

applies, namely, 8 U.S.C. §1231.  The pertinent portion of that section reads as follows:[3]

>    (a) Detention, release, and removal of aliens ordered removed
>        (1) Removal period
>        (A) In general
>          Except as otherwise provided in this section, **when an alien is
>        ordered removed**, the Attorney General shall remove the alien
>        from the United States within a period of 90 days (in this section
>        referred to as the "removal period").
>        (B) Beginning of period
>          The removal period begins on the latest of the following:
>          (i) The date the order of removal becomes administratively final.
>          (ii) If the removal order is judicially reviewed and if a court
>        orders a stay of the removal of the alien, the date of the court's final
>        order.
>          (iii) If the alien is detained or confined (except under an
>        immigration process), the date the alien is released from detention
>        or confinement.
>          *  *  *
>        (2) Detention.
>          During the removal period, the Attorney General shall detain the
>        alien.   .   .   .

8 U.S.C. §1231(a) (West, 2008) (emphasis added).  As §1231 indicates, the DHS has the

authority to remove the alien within 90 days and the DHS is authorized to detain the alien as a

---

[3] The entire section of the statute is attached hereto as Exhibit "B".

result of the order of removal.  It should not be disputed that Congress created two different stages of detention, namely, pre-decision in immigration court (§1226) and post-decision in custody (§1231) *see, Demore v. Kim*, 538 U.S. 510 (2003), and, as discussed below, used different terms to identify the point in time at which these provisions take effect during a proceeding, *i.e.*, "pending decision" (§1226)  and "ordered removed" (§1231).

These two sections of the INA demonstrate that Congress uses the term "pending decision" under §1226 as the operative event until which the DHS may detain the Petitioner, while in §1231 Congress uses the words "when ordered removed" to indicate the operative event triggering the authority to continue to detain.  Section 1231 confers the authority to remove an alien within 90 days, with the exceptions set forth at §1231(a)(1)(B)(i), (ii), and (iii); for example, during the time an appeal is pending before the Board.  *See*, §1231(a)(1)(B)(i).  Thus, as can be seen, when the authority to detain ends under §1226 with a decision, §1231 continues that authorization, but only in the event that there is an order of removal.  And, moreover, §1231 clearly omits any language granting the DHS authority to detain when there is a favorable decision by the immigration court.

Section 1231 contains additional language which also casts doubt on the DHS' authority to detain the Petitioner.  The only way that the Government can prevail in this case is to convince this Court that the language of "pending a decision" under §1226 is the same as "administratively final" order under §1231.[4]  Congress uses the words "final order" throughout the INA in

---

[4]  The Government wholly ignores the statute when it states on page 6 of the return that "In Petitioner Afify's case, Section 1226(a) has provided a statutory mechanism for him to seek release on bond while the decision regarding his removal proceedings remains pending, as it does in this case since the government has taken an appeal, and thus, there is no final decision regarding his removal at this time."  As can be seen here, the Government asks this Court to ignore the language of §1226(a) and conflate the two ideas of "final order" and "pending decision."

seventeen (17) different instances;[5] if Congress intended to authorize detention up to a "final

order" at the Board of Immigration Appeals, it would have stated it, and not resorted to the actual

language in §1226 which has a wholly different meaning, namely, that an alien may be "detained

pending a decision on whether the alien is to be removed from the United States." *See*, §1226(a),

*supra*.

It has not been argued by the Government that the DHS can, by regulation, give itself the

authority to detain the Petitioner in these circumstances.[6]  And even if it did, an agency cannot

create a regulation which is "one which Congress would have sanctioned." *See, Chevron v.

Natural Resources Defense Council, Inc.*, 467 U.S. 837, 846, 104 S.Ct. 2778, 2783 (1984).[7]

Certainly Congress cannot be found to have sanctioned detention of a alien granted relief because

simple common sense requires a person be released once he or she has prevailed in a case, as in a

criminal case.  It should be noted that this is not a criminal case, but a civil case, and to construe

the statute to give the DHS the authority to continue detention in a civil case, especially where

the Government cannot point to its authority to do so, would turn the law of *habeas corpus* on its

head.

The Government's argument that the Petitioner improperly challenges the DHS

"discretion" to detain him is easily defeated by the Petitioner's argument that there is simply no

---

[5] Without citing all of those instances, the first seven before §1231 are §§1182(a)(6)(F), 1187(c)(2)(E), 1189(c)(4), 1226a(b)(3), 1227(a)(2)(C)(i), 1228(b)(4)(F), and 1229(b)(7).

[6] The Government, having failed to argue this point has waived it.  The only regulations the Government cites pertain to the authority to detain prior to a decision under §1226(a).

[7] In *Chevron*, the Supreme Court addressed the limits to which an agency could "fill the gaps" in legislation. The Court said that if the choice made by the agency

> represents a reasonable accommodation of conflicting policies that were
> committed to the agency's care by the statute, we should not disturb it unless it
> appears *from the statute* or its legislative history that the accommodation is not
> one that Congress would have sanctioned.

*Chevron*, at 845, S.Ct. at 2783 (citation omitted) (emphasis added).

authority to detain him.  Accordingly, the bar to jurisdiction under §1226(e) does not apply.

*Gonzales v. O'Connell*, 355 F.3d 1010, 1014 (7th Cir. 2004) (court will take jurisdiction of

challenge to authority, not discretion).  A condition precedent for discretion is that the DHS have

the authority in the first instance.  Where there is no authority over a subject, there is necessarily

no discretion over it either.

The Government also asserts that the Petitioner has failed to "exhaust administrative

remedies."  The Petitioner raises a substantial constitutional question concerning the lack of due

process in the DHS' continued detention and, consequently, the Petitioner should not be required

to exhaust administrative remedies.  *See, Gonzales v. O'Connell*, *supra*, at 1016.[8] (exhaustion not

required "where substantial constitutional questions are raised.").  Also, the Petitioner should not

be required to exhaust administrative remedies because of the unreasonable delay to date and the

indefiniteness of any release date.  The Respondent has been detained since November, 2007,

and should have been released on January 22, 2008, when the Immigration Court entered a

decision in his favor.  *See, id.*

The primary argument, however, against having to wait any longer for an administrative

decision and presumably "exhaust administrative remedies" with the EOIR is that without

statutory authority, the DHS cannot rely upon either the INA or its regulations to confer rights

which it does not have the authority to confer in the first instance.  In other words, statutory

---

[8] The Court in *O'Connell* stated that
> We have held that individual interests demand that exhaustion be excused when
> (1) requiring exhaustion of administrative remedies causes prejudice, due to
> unreasonable delay or an indefinite timeframe for administrative action; (2) the
> agency lacks the ability or competence to resolve the issue or grant the relief
> requested; (3) appealing through the administrative process would be futile
> because the agency is biased or has predetermined the issue; or (4) where
> substantial constitutional questions are raised.

*Gonzales v. O'Connell, supra,* at 1016.

authority is a condition precedent to giving the Petitioner any administrative remedy, since regulations by their very nature must have their basis in a law. Thus, where there is no law conferring authority, there cannot be an administrative remedy to pursue.

D.    CONCLUSION

It cannot be reasonably asserted that DHS has the authority to detain the Petitioner under §1226 after a favorable decision has been made. A plain reading of the statute indicates that §1226 no longer applies. Further, a plain reading of §1231 indicates that the Government would be correct, but only if a removal order were entered against the Petitioner. Congress simply does not confer the authority to the DHS to continue to detain the Petitioner under §1226 after a favorable decision is entered. It would be error to construe §1226 to confer authority on the DHS to continue to detain the Petitioner until a "final administrative order" because that would require this Court to read that language into the statute, language which simply does not exist. A plain reading of the detention statutes demonstrates that once a decision is made in favor of an alien, the authority to detain is extinguished. The Petitioner has been detained since November, 2007, and should have been released on January 22, 2008, when the Immigration Court decided his case in his favor. It is unbelieveable that, in these circumstances, in a civil matter, a person may be held after actually prevailing, when a criminal defendant, after prevailing is entitled to be released. The Petitioner has the right to return to his family, work, and a regular life that each of us takes for granted.

The Government has failed to meet its burden to demonstrate that it has the authority to continue to detain the Petitioner after January 22, 2008, and, accordingly, the Petitioner prays that this Court issue the Writ forthwith and without any further delay.

Dated:    Chicago, Illinois                 Respectfully submitted,
          April 30, 2008


                                           /s/ James C. Ten Broeck Jr.
                                           **JAMES C. TEN BROECK JR.**
                                           *Attorney for Petitioner*
                                           **AHMED AFIFY**


**JAMES C. TEN BROECK JR.**
Attorney at Law
3117 W. Lawrence Ave.
Chicago, Illinois 60625
(773) 463-1601
No. 6209096


**Effective:[See Notes]**

United States Code Annotated Currentness
  Title 8. Aliens and Nationality (Refs & Annos)
    Chapter 12. Immigration and Nationality (Refs & Annos)
      Subchapter II. Immigration
        Part IV. Inspection, Apprehension, Examination, Exclusion, and Removal (Refs & Annos)
        → **§ 1226. Apprehension and detention of aliens**

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General--

    **(1)** may continue to detain the arrested alien; and

    **(2)** may release the alien on--

        **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

        **(B)** conditional parole; but

    **(3)** may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

(b) Revocation of bond or parole

The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien.

(c) Detention of criminal aliens

    (1) Custody

The Attorney General shall take into custody any alien who--

    **(A)** is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

    **(B)** is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

**(C)** is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [FN1] to a term of imprisonment of at least 1 year, or

**(D)** is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

(d) Identification of criminal aliens

**(1)** The Attorney General shall devise and implement a system--

**(A)** to make available, daily (on a 24-hour basis), to Federal, State, and local authorities the investigative resources of the Service to determine whether individuals arrested by such authorities for aggravated felonies are aliens;

**(B)** to designate and train officers and employees of the Service to serve as a liaison to Federal, State, and local law enforcement and correctional agencies and courts with respect to the arrest, conviction, and release of any alien charged with an aggravated felony; and

**(C)** which uses computer resources to maintain a current record of aliens who have been convicted of an aggravated felony, and indicates those who have been removed.

**(2)** The record under paragraph (1)(C) shall be made available--

**(A)** to inspectors at ports of entry and to border patrol agents at sector headquarters for purposes of immediate identification of any alien who was previously ordered removed and is seeking to reenter the United States, and

**(B)** to officials of the Department of State for use in its automated visa lookout system.

**(3)** Upon the request of the governor or chief executive officer of any State, the Service shall provide assistance to State courts in the identification of aliens unlawfully present in the United States pending criminal prosecution.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(e) Judicial review

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

CREDIT(S)

(June 27, 1952, c. 477, Title II, ch. 4, § 236, 66 Stat. 200; Nov. 29, 1990, Pub.L. 101-649, Title V, § 504(b), Title VI, § 603(a)(12), 104 Stat. 5050, 5083; Dec. 12, 1991, Pub.L. 102-232, Title III, § 306(a)(5), 105 Stat. 1751; Sept. 30, 1996, Pub.L. 104-208, Div. C, Title III, §§ 303(a), 371(b)(5), 110 Stat. 3009-585, 3009-645.)

[FN1] So in original. Probably should be "sentenced".

1996 Acts. Pub.L. 104-208, Div. C, Title III, § 303(b), Sept. 30, 1996, 110 Stat. 3009-586, provided that:

**"(1) In general.**--The amendment made by subsection (a) [amending this section] shall become effective on the title III-A effective date [with certain exceptions and subject to certain transitional rules, on the first day of the first month beginning more than 180 days after Sept. 30, 1996, see section 309 of Pub.L. 104-208 set out as a note under section 1101 of this title].

Current through P.L. 110-205 approved 4-25-08

Copr. (C) 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works
END OF DOCUMENT



**Effective:[See Notes]**

United States Code Annotated Currentness
   Title 8. Aliens and Nationality (Refs & Annos)
      Chapter 12. Immigration and Nationality (Refs & Annos)
         Subchapter II. Immigration
            Part IV. Inspection, Apprehension, Examination, Exclusion, and Removal (Refs & Annos)
               **§ 1231. Detention and removal of aliens ordered removed**

(a) Detention, release, and removal of aliens ordered removed

   (1) Removal period

   (A) In general

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

   (B) Beginning of period

The removal period begins on the latest of the following:

   **(i)** The date the order of removal becomes administratively final.

   **(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

   **(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

   (C) Suspension of period

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

   (2) Detention

During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

(3) Supervision after 90-day period

If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien--

**(A)** to appear before an immigration officer periodically for identification;

**(B)** to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;

**(C)** to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and

**(D)** to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

(4) Aliens imprisoned, arrested, or on parole, supervised release, or probation

(A) In general

Except as provided in section 259(a) of Title 42 and paragraph (2) [FN1], the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment. Parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal.

(B) Exception for removal of nonviolent offenders prior to completion of sentence of imprisonment

The Attorney General is authorized to remove an alien in accordance with applicable procedures under this chapter before the alien has completed a sentence of imprisonment--

**(i)** in the case of an alien in the custody of the Attorney General, if the Attorney General determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense related to smuggling or harboring of aliens or an offense described in section 1101(a)(43)(B), (C), (E), (I), or (L) of this title [FN2] and (II) the removal of the alien is appropriate and in the best interest of the United States; or

**(ii)** in the case of an alien in the custody of a State (or a political subdivision of a State), if the chief State official exercising authority with respect to the incarceration of the alien determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense described in section 1101(a)(43)(C) or (E) of this title), (II) the removal is appropriate and in the best interest of the State, and (III) submits a written request to the Attorney General that such alien be so removed.

(C) Notice

Any alien removed pursuant to this paragraph shall be notified of the penalties under the laws of the United States relating to the reentry of deported aliens, particularly the expanded penalties for aliens removed under subparagraph (B).

(D) No private right

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No cause or claim may be asserted under this paragraph against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

(5) Reinstatement of removal orders against aliens illegally reentering

If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

(6) Inadmissible or criminal aliens

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

(7) Employment authorization

No alien ordered removed shall be eligible to receive authorization to be employed in the United States unless the Attorney General makes a specific finding that--

**(A)** the alien cannot be removed due to the refusal of all countries designated by the alien or under this section to receive the alien, or

**(B)** the removal of the alien is otherwise impracticable or contrary to the public interest.

(b) Countries to which aliens may be removed

(1) Aliens arriving at the United States

Subject to paragraph (3)--

(A) In general

Except as provided by subparagraphs (B) and (C), an alien who arrives at the United States and with respect to whom proceedings under section 1229a of this title were initiated at the time of such alien's arrival shall be removed to the country in which the alien boarded the vessel or aircraft on which the alien arrived in the United States.

(B) Travel from contiguous territory

If the alien boarded the vessel or aircraft on which the alien arrived in the United States in a foreign territory contiguous to the United States, an island adjacent to the United States, or an island adjacent to a foreign territory contiguous to the United States, and the alien is not a native, citizen, subject, or national of, or does not reside in, the territory or island, removal shall be to the country in which the alien boarded the vessel that transported the alien to the territory or island.

(C) Alternative countries

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

If the government of the country designated in subparagraph (A) or (B) is unwilling to accept the alien into that country's territory, removal shall be to any of the following countries, as directed by the Attorney General:

**(i)** The country of which the alien is a citizen, subject, or national.

**(ii)** The country in which the alien was born.

**(iii)** The country in which the alien has a residence.

**(iv)** A country with a government that will accept the alien into the country's territory if removal to each country described in a previous clause of this subparagraph is impracticable, inadvisable, or impossible.

(2) Other aliens

Subject to paragraph (3)--

(A) Selection of country by alien

Except as otherwise provided in this paragraph--

**(i)** any alien not described in paragraph (1) who has been ordered removed may designate one country to which the alien wants to be removed, and

**(ii)** the Attorney General shall remove the alien to the country the alien so designates.

(B) Limitation on designation

An alien may designate under subparagraph (A)(i) a foreign territory contiguous to the United States, an adjacent island, or an island adjacent to a foreign territory contiguous to the United States as the place to which the alien is to be removed only if the alien is a native, citizen, subject, or national of, or has resided in, that designated territory or island.

(C) Disregarding designation

The Attorney General may disregard a designation under subparagraph (A)(i) if--

**(i)** the alien fails to designate a country promptly;

**(ii)** the government of the country does not inform the Attorney General finally, within 30 days after the date the Attorney General first inquires, whether the government will accept the alien into the country;

**(iii)** the government of the country is not willing to accept the alien into the country; or

**(iv)** the Attorney General decides that removing the alien to the country is prejudicial to the United States.

(D) Alternative country

If an alien is not removed to a country designated under subparagraph (A)(i), the Attorney General shall re-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

move the alien to a country of which the alien is a subject, national, or citizen unless the government of the country--

**(i)** does not inform the Attorney General or the alien finally, within 30 days after the date the Attorney General first inquires or within another period of time the Attorney General decides is reasonable, whether the government will accept the alien into the country; or

**(ii)** is not willing to accept the alien into the country.

(E) Additional removal countries

If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries:

**(i)** The country from which the alien was admitted to the United States.

**(ii)** The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.

**(iii)** A country in which the alien resided before the alien entered the country from which the alien entered the United States.

**(iv)** The country in which the alien was born.

**(v)** The country that had sovereignty over the alien's birthplace when the alien was born.

**(vi)** The country in which the alien's birthplace is located when the alien is ordered removed.

**(vii)** If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country.

(F) Removal country when United States is at war

When the United States is at war and the Attorney General decides that it is impracticable, inadvisable, inconvenient, or impossible to remove an alien under this subsection because of the war, the Attorney General may remove the alien--

**(i)** to the country that is host to a government in exile of the country of which the alien is a citizen or subject if the government of the host country will permit the alien's entry; or

**(ii)** if the recognized government of the country of which the alien is a citizen or subject is not in exile, to a country, or a political or territorial subdivision of a country, that is very near the country of which the alien is a citizen or subject, or, with the consent of the government of the country of which the alien is a citizen or subject, to another country.

(3) Restriction on removal to a country where alien's life or freedom would be threatened

(A) In general

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Notwithstanding paragraphs (1) and (2), the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.

(B) Exception

Subparagraph (A) does not apply to an alien deportable under section 1227(a)(4)(D) of this title or if the Attorney General decides that--

(i) the alien ordered, incited, assisted, or otherwise participated in the persecution of an individual because of the individual's race, religion, nationality, membership in a particular social group, or political opinion;

(ii) the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States;

(iii) there are serious reasons to believe that the alien committed a serious nonpolitical crime outside the United States before the alien arrived in the United States; or

(iv) there are reasonable grounds to believe that the alien is a danger to the security of the United States.

For purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime. For purposes of clause (iv), an alien who is described in section 1227(a)(4)(B) of this title shall be considered to be an alien with respect to whom there are reasonable grounds for regarding as a danger to the security of the United States.

(C) Sustaining burden of proof; credibility determinations

In determining whether an alien has demonstrated that the alien's life or freedom would be threatened for a reason described in subparagraph (A), the trier of fact shall determine whether the alien has sustained the alien's burden of proof, and shall make credibility determinations, in the manner described in clauses (ii) and (iii) of section 1158(b)(1)(B) of this title.

(c) Removal of aliens arriving at port of entry

(1) Vessels and aircraft

An alien arriving at a port of entry of the United States who is ordered removed either without a hearing under section 1225(b)(1) or 1225(c) of this title or pursuant to proceedings under section 1229a of this title initiated at the time of such alien's arrival shall be removed immediately on a vessel or aircraft owned by the owner of the vessel or aircraft on which the alien arrived in the United States, unless--

(A) it is impracticable to remove the alien on one of those vessels or aircraft within a reasonable time, or

(B) the alien is a stowaway--

(i) who has been ordered removed in accordance with section 1225(a)(1) of this title,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(ii)** who has requested asylum, and

**(iii)** whose application has not been adjudicated or whose asylum application has been denied but who has not exhausted all appeal rights.

(2) Stay of removal

(A) In general

The Attorney General may stay the removal of an alien under this subsection if the Attorney General decides that--

**(i)** immediate removal is not practicable or proper; or

**(ii)** the alien is needed to testify in the prosecution of a person for a violation of a law of the United States or of any State.

(B) Payment of detention costs

During the period an alien is detained because of a stay of removal under subparagraph (A)(ii), the Attorney General may pay from the appropriation "Immigration and Naturalization Service--Salaries and Expenses"--

**(i)** the cost of maintenance of the alien; and

**(ii)** a witness fee of $1 a day.

(C) Release during stay

The Attorney General may release an alien whose removal is stayed under subparagraph (A)(ii) on--

**(i)** the alien's filing a bond of at least $500 with security approved by the Attorney General;

**(ii)** condition that the alien appear when required as a witness and for removal; and

**(iii)** other conditions the Attorney General may prescribe.

(3) Costs of detention and maintenance pending removal

(A) In general

Except as provided in subparagraph (B) and subsection (d) [FN3] of this section, an owner of a vessel or aircraft bringing an alien to the United States shall pay the costs of detaining and maintaining the alien--

**(i)** while the alien is detained under subsection (d)(1) of this section, and

**(ii)** in the case of an alien who is a stowaway, while the alien is being detained pursuant to--

**(I)** subsection (d)(2)(A) or (d)(2)(B)(i) of this section,

**(II)** subsection (d)(2)(B)(ii) or (iii) of this section for the period of time reasonably necessary for the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

owner to arrange for repatriation or removal of the stowaway, including obtaining necessary travel documents, but not to extend beyond the date on which it is ascertained that such travel documents cannot be obtained from the country to which the stowaway is to be returned, or

**(III)** section 1225(b)(1)(B)(ii) of this title, for a period not to exceed 15 days (excluding Saturdays, Sundays, and holidays) commencing on the first such day which begins on the earlier of 72 hours after the time of the initial presentation of the stowaway for inspection or at the time the stowaway is determined to have a credible fear of persecution.

(B) Nonapplication

Subparagraph (A) shall not apply if--

**(i)** the alien is a crewmember;

**(ii)** the alien has an immigrant visa;

**(iii)** the alien has a nonimmigrant visa or other documentation authorizing the alien to apply for temporary admission to the United States and applies for admission not later than 120 days after the date the visa or documentation was issued;

**(iv)** the alien has a reentry permit and applies for admission not later than 120 days after the date of the alien's last inspection and admission;

**(v)(I)** the alien has a nonimmigrant visa or other documentation authorizing the alien to apply for temporary admission to the United States or a reentry permit;

**(II)** the alien applies for admission more than 120 days after the date the visa or documentation was issued or after the date of the last inspection and admission under the reentry permit; and

**(III)** the owner of the vessel or aircraft satisfies the Attorney General that the existence of the condition relating to inadmissibility could not have been discovered by exercising reasonable care before the alien boarded the vessel or aircraft; or

**(vi)** the individual claims to be a national of the United States and has a United States passport.

(d) Requirements of persons providing transportation

(1) Removal at time of arrival

An owner, agent, master, commanding officer, person in charge, purser, or consignee of a vessel or aircraft bringing an alien (except an alien crewmember) to the United States shall--

**(A)** receive an alien back on the vessel or aircraft or another vessel or aircraft owned or operated by the same interests if the alien is ordered removed under this part; and

**(B)** take the alien to the foreign country to which the alien is ordered removed.

(2) Alien stowaways

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

An owner, agent, master, commanding officer, charterer, or consignee of a vessel or aircraft arriving in the United States with an alien stowaway--

**(A)** shall detain the alien on board the vessel or aircraft, or at such place as the Attorney General shall designate, until completion of the inspection of the alien by an immigration officer;

**(B)** may not permit the stowaway to land in the United States, except pursuant to regulations of the Attorney General temporarily--

**(i)** for medical treatment,

**(ii)** for detention of the stowaway by the Attorney General, or

**(iii)** for departure or removal of the stowaway; and

**(C)** if ordered by an immigration officer, shall remove the stowaway on the vessel or aircraft or on another vessel or aircraft.

The Attorney General shall grant a timely request to remove the stowaway under subparagraph (C) on a vessel or aircraft other than that on which the stowaway arrived if the requester has obtained any travel documents necessary for departure or repatriation of the stowaway and removal of the stowaway will not be unreasonably delayed.

(3) Removal upon order

An owner, agent, master, commanding officer, person in charge, purser, or consignee of a vessel, aircraft, or other transportation line shall comply with an order of the Attorney General to take on board, guard safely, and transport to the destination specified any alien ordered to be removed under this chapter.

(e) Payment of expenses of removal

(1) Costs of removal at time of arrival

In the case of an alien who is a stowaway or who is ordered removed either without a hearing under section 1225(a)(1) [FN4] or 1225(c) of this title or pursuant to proceedings under section 1229a of this title initiated at the time of such alien's arrival, the owner of the vessel or aircraft (if any) on which the alien arrived in the United States shall pay the transportation cost of removing the alien. If removal is on a vessel or aircraft not owned by the owner of the vessel or aircraft on which the alien arrived in the United States, the Attorney General may--

**(A)** pay the cost from the appropriation "Immigration and Naturalization Service--Salaries and Expenses"; and

**(B)** recover the amount of the cost in a civil action from the owner, agent, or consignee of the vessel or aircraft (if any) on which the alien arrived in the United States.

(2) Costs of removal to port of removal for aliens admitted or permitted to land

In the case of an alien who has been admitted or permitted to land and is ordered removed, the cost (if any) of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

removal of the alien to the port of removal shall be at the expense of the appropriation for the enforcement of this chapter.

(3) Costs of removal from port of removal for aliens admitted or permitted to land

(A) Through appropriation

Except as provided in subparagraph (B), in the case of an alien who has been admitted or permitted to land and is ordered removed, the cost (if any) of removal of the alien from the port of removal shall be at the expense of the appropriation for the enforcement of this chapter.

(B) Through owner

(i) In general

In the case of an alien described in clause (ii), the cost of removal of the alien from the port of removal may be charged to any owner of the vessel, aircraft, or other transportation line by which the alien came to the United States.

(ii) Aliens described

An alien described in this clause is an alien who--

**(I)** is admitted to the United States (other than lawfully admitted for permanent residence) and is ordered removed within 5 years of the date of admission based on a ground that existed before or at the time of admission, or

**(II)** is an alien crewman permitted to land temporarily under section 1282 of this title and is ordered removed within 5 years of the date of landing.

(C) Costs of removal of certain aliens granted voluntary departure

In the case of an alien who has been granted voluntary departure under section 1229c of this title and who is financially unable to depart at the alien's own expense and whose removal the Attorney General deems to be in the best interest of the United States, the expense of such removal may be paid from the appropriation for the enforcement of this chapter.

(f) Aliens requiring personal care during removal

(1) In general

If the Attorney General believes that an alien being removed requires personal care because of the alien's mental or physical condition, the Attorney General may employ a suitable person for that purpose who shall accompany and care for the alien until the alien arrives at the final destination.

(2) Costs

The costs of providing the service described in paragraph (1) shall be defrayed in the same manner as the expense of removing the accompanied alien is defrayed under this section.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(g) Places of detention

    (1) In general

The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal. When United States Government facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental, the Attorney General may expend from the appropriation "Immigration and Naturalization Service--Salaries and Expenses", without regard to section 5 of Title 41, amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities (including living quarters for immigration officers if not otherwise available) necessary for detention.

    (2) Detention facilities of the immigration and naturalization service

Prior to initiating any project for the construction of any new detention facility for the Service, the Commissioner shall consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility suitable for such use.

(h) Statutory construction

Nothing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.

(i) Incarceration

(1) If the chief executive officer of a State (or, if appropriate, a political subdivision of the State) exercising authority with respect to the incarceration of an undocumented criminal alien submits a written request to the Attorney General, the Attorney General shall, as determined by the Attorney General--

    (A) enter into a contractual arrangement which provides for compensation to the State or a political subdivision of the State, as may be appropriate, with respect to the incarceration of the undocumented criminal alien; or

    (B) take the undocumented criminal alien into the custody of the Federal Government and incarcerate the alien.

(2) Compensation under paragraph (1)(A) shall be the average cost of incarceration of a prisoner in the relevant State as determined by the Attorney General.

(3) For purposes of this subsection, the term "undocumented criminal alien" means an alien who--

    (A) has been convicted of a felony or two or more misdemeanors; and

    (B)(i) entered the United States without inspection or at any time or place other than as designated by the Attorney General;

    (ii) was the subject of exclusion or deportation proceedings at the time he or she was taken into custody by the State or a political subdivision of the State; or

    (iii) was admitted as a nonimmigrant and at the time he or she was taken into custody by the State or a polit-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ical subdivision of the State has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed under section 1258 of this title, or to comply with the conditions of any such status.

**(4)(A)** In carrying out paragraph (1), the Attorney General shall give priority to the Federal incarceration of undocumented criminal aliens who have committed aggravated felonies.

**(B)** The Attorney General shall ensure that undocumented criminal aliens incarcerated in Federal facilities pursuant to this subsection are held in facilities which provide a level of security appropriate to the crimes for which they were convicted.

**(5)** There are authorized to be appropriated to carry out this subsection--

    **(A)** $750,000,000 for fiscal year 2006;

    **(B)** $850,000,000 for fiscal year 2007; and

    **(C)** $950,000,000 for each of the fiscal years 2008 through 2011.

**(6)** Amounts appropriated pursuant to the authorization of appropriations in paragraph (5) that are distributed to a State or political subdivision of a State, including a municipality, may be used only for correctional purposes.

CREDIT(S)

(June 27, 1952, c. 477, Title II, ch. 4, § 241, as added and amended Sept. 30, 1996, Pub.L. 104-208, Div. C, Title III, §§ 305(a)(3), 306(a)(1), 328(a)(1), 110 Stat. 3009-598, 3009-607, 3009-630; Nov. 2, 2002, Pub.L. 107-273, Div. C, Title I, § 11014, 116 Stat. 1824; May 11, 2005, Pub.L. 109-13, Div. B, Title I, § 101(c), 119 Stat. 304; Jan. 5, 2006, Pub.L. 109-162, Title XI, § 1196(a), (b), 119 Stat. 3130.)

    [FN1] So in original. Probably should be "subparagraph (B)".

    [FN2] So in original. Probably should be followed by a closing parenthesis.

    [FN3] So in original. Probably should be subsection "(e)".

    [FN4] So in original. Probably should be "1225(b)(1)".

2006 Acts. Pub.L. 109-162, § 1196(d), as added Pub.L. 109-271, § 8(n)(6), Aug. 12, 2006, 120 Stat. 768, provided that: "The amendments made by subsections (a) and (b) [amending this section] shall take effect on October 1, 2006."

Current through P.L. 110-205 approved 4-25-08

Copr. (C) 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works
END OF DOCUMENT